Counsel for the plaintiffs shall submit within ten (10) days an appropriate order.

**McDOWELL NATIONAL BANK OF SHARON, Plaintiff,**

v.

**James E. SMITH, Comptroller of the Currency of the United States, Defendant,**

**First National Bank of Slippery Rock, Applicant for Intervention.**

**Civ. A. No. 73–440.**

United States District Court,
W. D. Pennsylvania.

Oct. 4, 1973.

Martin E. Cusick, Cusick, Madden, Joyce & McKay, Sharon, Pa., for plaintiff.

Thomas A. Daley, Asst. U. S. Atty., Pittsburgh, Pa., Harland F. Leathers, and Nicholas H. Diacou, John E. Shockey, Lise S. Haupt, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

McCUNE, District Judge.

Following the filing of a complaint by plaintiff seeking a preliminary injunction against the Comptroller of the Currency, who had issued an order permitting the First National Bank of Slippery Rock, Pennsylvania, to establish a branch office at 1319 West Main Street, Grove City, Mercer County, Pennsylvania, we ordered that the defendant show cause why he should not be enjoined from permitting the opening of the branch office. A hearing was held on September 5, 1973, where a certified copy of the official record of the Comptroller was introduced. No additional testimony was taken, it being agreed that the official record contained all of the proceedings and all of the testimony upon which the decision of the Comptroller was based when he issued approval of the branch bank.

The plaintiff had opposed the approval of the branch bank or office of The First National Bank of Slippery Rock.

The hearing took the form of argument, plaintiff contending that on the basis of the record the Comptroller had abused his discretion in granting approval and the defendant and the intervenor (The First National Bank of Slippery Rock) arguing a contrary position.

It was agreed that the court should decide the issue on the record and the briefs submitted.

We have reviewed the record and in our view we require clarification from the Comptroller.

The record indicates on pages 7 and 7A that the applicant bank intends to invest $35,000.00 in land in Grove City and $200,000.00 in a building, $25,000.00 in furniture and fixtures, $25,000.00 in a vault and $25,000.00 for other equipment or a total of $310,000.00. It is noted on page 7A that this investment would, together with the investment in its present banking facilities, exceed the applicant banks capital stock. It is noted by the investigator that as of January 9, 1973, the applicant bank had $233,288.00 invested in bank buildings, less nominal depreciation and that the bank's capital stock equalled $210,000.00. It is noted that permission was granted to applicant on May 16, 1972, to invest up to $250,000.00 in fixed assets. It is stated that management (of the First National Bank of Slippery Rock, the applicant) fully realized that further fixed asset investment, plus marginal capital position, "will necessitate a new capital program. This they are willing to do. Supposedly such program will be large enough to avoid an over-investment of banking house to capital stock."

Although there is an indication in the record that the program to raise additional capital is contemplated, there is no indication in the record whether it has been accomplished or even started.

On page 5 of the record in the report (recommendation) of R. C. Egertson,

Regional Administrator, this problem is recognized again. Mr. Egertson reported as follows: "If approval is granted, approval will also be needed to allow applicant to exceed its capital in an investment in fixed assets. We would not object to granting approval for the additional investment in fixed assets. Approval is recommended." (We assume the last sentence refers to approval of the branch).

But we cannot find in the record any indication that the Comptroller has granted approval for additional investment in fixed assets or has refused to grant it for that matter.

There is an indication that the estimate of the cost of establishing the branch was a very rough estimate and that the applicant intends to invest less than set forth in the portion of the report called "Investigation and Recommendation" but we have no definite projection of the investment in fixed assets other than the $310,000.00 projection set forth on page 7. This projection is apparently the applicant's projection and no other definite projection exists.

The concern of the investigator over the investment in fixed assets compared with the capital stock of the bank was occasioned, no doubt, by 12 U.S.C.A. § 371d. The Act of December 23, 1913, as amended, provides the following:

"No national bank, without the approval of the Comptroller of the Currency, and no State member bank, without the approval of the Board of Governors of the Federal Reserve System, shall (1) invest in bank premises, or in the stock, bonds, debentures, or other such obligations of any corporation holding the premises of such bank, or (2) make loans to or upon the security of the stock of any such corporation, if the aggregate of all such investments and loans, together with the amount of any indebtedness incurred by any such corporation

which is an affiliate of the bank, as defined in section 221a of this title, will exceed the amount of the capital stock of such bank."

It seems certain that the capital stock of the applicant bank equals $210,000.-00. It is also apparent that the applicant already has invested $346,097.60 in a banking house and fixtures (or $233,288.00 less nominal depreciation, depending on whether one uses the bank's statement on p. 110 of the record or the investigator's comment). In either event the bank's investment in fixed assets will far exceed its capital stock when the new facilities are added and will exceed $250,000.00 (for which permission was apparently granted May 16, 1972).

Mr. George P. Renerd, Jr., the National Bank Examiner also comments on the problem on page D–23 and Mr. Egertson comments further at page E–27.

We need to know, therefore, whether the Comptroller has approved the additional investment in fixed assets. The official record does not contain such information.

Therefore, we direct that the Comptroller supplement or clarify the official record stating whether the aforesaid approval has been extended and whether the sale of additional stock or debentures has been accomplished or whether both have been done. Without one or the other actions having been accomplished we believe the approval of the branch office by the Comptroller was inadvertent.

At the argument it was agreed that applicant would not start to build the branch bank until the court had made a decision. The Comptroller shall supplement his report within 20 days from the date hereof. Meanwhile, the applicant shall not commence construction of the branch office. If additional time is required, counsel may apply for the same.

It is so ordered.